AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)        ☐ Original   ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
08/16/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

FILED
Aug 16, 2021
1st AMENDED CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY _Nancy Boehme_
Deputy Clerk, U.S. District Court

United States of America

v.

FERNANDO RODRIGUEZ FONSECA,
Defendant.

Case No. 8:21-MJ-00559-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of August 15, 2021 in the county of Orange in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 1324(a)(1)(A)(i), (a)(1)(A)(v)(I) | Conspiracy to Bring and Attempt to Bring an Alien to the United States at a Place Other Than a Designated Port of Entry |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Special Agent DHS/HSI, Martina Doino
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: August 16, 2021

**DOUGLAS F. McCORMICK**
Judge's signature

City and state: Santa Ana, California

Hon. Douglas F. McCormick, U.S. Magistrate Judge
Printed name and title

AUSA M. Rabbani   (714) 338-3499

**AFFIDAVIT**

I, Martina Doino, being duly sworn, declare and state as follows:

**I.  INTRODUCTION**

1. I am a Special Agent ("SA") with the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been so employed since December 2019.  I am currently assigned to the HSI Office of the Special Agent in Charge at the Los Angeles International Airport.  I attended the HSI Criminal Investigator Training Program at the Federal Law Enforcement Training Center ("FLETC"), in Glynco, Georgia.  At FLETC, I received training in conducting criminal investigations into narcotics smuggling, interdiction, and distribution of controlled substances.

2. I am currently assigned to the Los Angeles Border Enforcement Security Taskforce ("LA BEST") in Los Angeles, California, and have been so assigned since August 2021.  LA BEST is a multi-agency task force aimed at identifying, targeting, and eliminating vulnerabilities to the security of the United States related to the Los Angeles/Long Beach seaport complex, as well as the surrounding transportation and maritime corridors.  My responsibilities include the investigation of violations of federal criminal laws, including crimes involving money

laundering, narcotics trafficking, smuggling, fraud, and immigration violations.

3. Prior to my tenure as an SA, I was a police officer in Key Biscayne, Florida from February 2015 to May 2019. From July 2018 to May 2019, I was a Task Force Officer ("TFO") on a High Intensity Drug Trafficking Area Task Force, where I participated in investigations into money laundering and drug trafficking crimes in South Florida. Throughout my law enforcement career, I have participated in numerous criminal investigations involving narcotics importation or distribution. Through these investigations, I am familiar with the methods and practices of drug users, drug traffickers, and drug manufacturers. I have also spoken at length with other HSI SAs and local law enforcement officers regarding methods of drug trafficking.

## II. PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of a criminal complaint against Fernando RODRIGUEZ FONSECA for violations of Title 8, United States Code, Section 1326(a), Attempted Illegal Reentry into in the United States Following Deportation or Removal, and Section 1324(a)(1)(A)(i), (a)(1)(A)(v)(I), Conspiracy to Bring and Attempt to Bring an Alien to the United States at a Place Other Than a Designated Port of Entry.

5. Because this affidavit is being submitted for the limited

purpose of securing the requested criminal complaint, I have not attempted to include each and every fact that may be known to me and other law enforcement personnel concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause for the requested criminal complaint. Where statements of others are set forth in this affidavit, they are set forth in substance and in part, unless otherwise indicated. The facts set forth in this affidavit are based upon information obtained from other law enforcement personnel, reports and database queries, and, where noted, my personal knowledge and training and experience.

### III. STATEMENT OF PROBABLE CAUSE

6. Based on my conversations with law enforcement officers, review of reports of investigation, and my own knowledge of this investigation, I know the following:

A. On Sunday, August 15, 2021, at approximately 4:15 p.m., Orange County Sheriff's Department ("OCSD") made contact with three individuals on a pleasure craft at Dana Point Harbor in Dana Point, California, and determined that they were possibly involved in smuggling activity based upon their statements to officers, as set forth in more detail below. OCSD advised the Maritime Coordination Center of the incident, and ReCom partners were contacted to provide a federal response to the possible

smuggling event. Response came from, among others, the U.S. Border Patrol ("USBP") and the CBP/Office of Field Operations Special Enforcement Group.

B. OCSD Deputies P.M. and D.D. advised that they were contacted by vessel assist (TowBoat U.S.) who advised they encountered a suspicious vessel at the Dana Point fuel dock (34661 Puerto Place, Dana Point, California 92629). The vessel's motor appeared to have blown out after the arrival at the fuel dock.

C. Two subjects on the vessel, during conversation with TowBoat U.S., said things that did not make sense, including that they had caught fish, but only last week and not that day. TowBoat U.S. contacted OCSD to investigate.

D. Upon arrival, OCSD noticed that the boat was missing parts of its California registration number, and that the boat had fishing rods without fishing line, despite the subjects stating that they had been out fishing. OCSD performed a registration check and then boarded the vessel, where they observed more signs of maritime smuggling, including fuel jugs in the cabin, excess life vests, and Mexican-labeled food, as well as three individuals previously not known to be on board the vessel.

E. OCSD advised that the operator of the vessel was wearing a pink shirt and was attempting to work on the motor intermittently while getting assistance from the other person on

deck, who was wearing a white "Hugo Boss" shirt.

F. At approximately 5:00 p.m., the USBP performed an immigration inspection and determined, based on questioning, that all five subjects had unlawfully entered the United States without inspection. The subjects were then taken to San Clemente for processing, and the vessel was seized. LA BEST responded to San Clemente to interview subjects.

G. On August 15,2021, Special Agent Martina Doino and Special Agent Landon Grace interviewed the migrant who was wearing a pink shirt and was suspected of being the operator, later identified as Fernando RODRIGUEZ FONSECA. RODRIGUEZ FONSECA was Mirandized and notified of his consular rights in Spanish and agreed to speak with law enforcement.

H. RODRIGUEZ FONSECA stated that he was born in Senora, Mexico. RODRIGUEZ FONSECA admitted he did not have legal immigration status in the United States. RODRIGUEZ FONSECA stated that the last time he entered the United States was about "a month ago, possibly near Long Beach". RODRIGUEZ FONSECA stated that on August 15, 2021, he had entered the United States by boat. RODRIGUEZ FONSECA admitted that he had been deported or removed from the United States approximately five times. RODRIGUEZ FONSECA admitted that he knew it was illegal to re-enter the United States after being deported.

I. RODRIGUEZ FONSECA stated he entered the United States on August 15, 2021, for work. When asked by SAs if he had ever been arrested, RODRIGUEZ FONSECA stated he had served time for a prior human smuggling charge.

J. RODRIGUEZ FONSECA admitted that he had smuggled illegal aliens on August 15, 2021, explaining that it was his "job" to do so. RODRIGUEZ FONSECA stated there were 13 people including himself on the vessel on August 15, 2021. RODRIGUEZ FONSECA admitted he knew everyone on the vessel was undocumented because according to him, if they had status, "they would not be riding in a boat to the United States". When asked about how he knew the way to United States, RODRIGUEZ FONSECA stated that because he had made the trip various times, he knew the route well. RODRIGUEZ FONSECA stated he was the captain of the boat on August 15, 2021, and had served as the captain on other occasions as well. RODRIGUEZ FONSECA admitted to driving a boat for the purpose of smuggling aliens approximately seven to eight other times. When SAs asked about compensation, RODRIGUEZ FONSECA stated that he gets paid "good or sometimes nothing". RODRIGUEZ FONSECA stated he can make from $500 to $1,000 per person per trip.

K. RODRIGUEZ FONSECA stated that the vessel had departed from Ensenada, Mexico, on August 14, 2021, at approximately 22:00 hours from a marina called "Cruise Port" located within a yacht

club. RODRIGUEZ FONSECA claimed that he does not know who makes the arrangements, and that he is solicited for smuggling jobs via "el mercado negro," or the black market. RODRIGUEZ FONSECA stated that he does not know the smugglers personally and that he met one smuggler once in person on August 14, 2021. RODRIGUEZ FONSECA described the person as a dark Mexican male, approximately 50-60 years old.

L. SAs questioned RODRIGUEZ FONSECA about the details surrounding the event occurring on August 15, 2021. RODRIGUEZ FONSECA stated that the boat's original destination was Long Beach, California, but that somewhere along the coast, the vessel ran out of gasoline. RODRIGUEZ FONSECA navigated the boat to the gas pumps in Dana Point. When the boat arrived at the pumps, RODRIGUEZ FONSECA stated that multiple people exited the boat, leaving him and four individuals on board. RODRIGUEZ FONSECA stated after fueling the boat, there was an issue with the battery and the boat would not turn on. RODRIGUEZ FONSECA stated there was a co-captain on board assisting him, but he does not know his name. RODRIGUEZ FONSECA stated that the unknown individual exited the boat at Dana Point and did not come back on board. RODRIGUEZ FONSECA admitted that his instructions were to continue onto the original destination of Long Beach. RODRIGUEZ FONSECA stated that the boat was equipped with a Global Positioning System (GPS). RODRIGUEZ FONSECA denied

having a cellphone, nor was one found on his person.

M. While at the SCM, SAs were conversing with HSI Task Force Officer (TFO) Dany Mancilla about the case, when TFO Mancilla recognized RODRIGUEZ FONSECA as the subject of a previous investigation involving a separate maritime narcotic smuggling event.

N. DHS record checks revealed that RODRIGUEZ FONSECA had been previously arrested and convicted on June 12, 2017, for possession with intent to distribute. RODRIGUEZ FONSECA was sentenced to 366 days in prison for that conviction. On March 29, 2018, RODRIGUEZ-FONSECA was convicted in the United States District Court in the Southern District of California for the offense of bringing in illegal aliens without presentation and aiding and abetting, in violation of Title 8 of the United States Criminal Code Section 1324. For this offense, RODRIGUEZ-FONSECA was sentenced to twenty-four (24) months of imprisonment.

O. On or about November 29, 2019, RODRIGUEZ FONSECA was served a Form I-860, Expedited Removal. RODRIGUEZ FONSECA was then removed to Mexico at the San YSIDRO Port of Entry.

## STATEMENTS FROM MATERIAL WITNESSES

### Material witness Jose Humberto ORTIZ Medina

7. On August 15, 2021, at approximately 11:14 pm, Border Patrol Agent Intelligence (BPA-I) Dany Mancilla conducted a

video-recorded interview of Jose Humberto ORTIZ Medina. BPA-I Roland Nejal witnessed the interview. Both agents were in plain clothes with no weapons visible. The interview was conducted in the Spanish language. At approximately 11:17 pm, ORTIZ was read his Miranda Rights as per form I-214. ORTIZ acknowledged he understood his rights and agreed to speak with agents without an attorney present.

8.   ORTIZ stated that his full name is Jose Humberto ORTIZ Medina and that he has not used any other names. ORTIZ stated that he is a citizen of Mexico and was born on March 24, 1973. ORTIZ said he does not have any legal immigration documents that allow him to remain in the United States. ORTIZ stated that he had been deported to Mexico in 2010, after a judge ordered him deported. ORTIZ said that he did not apply for or request permission to re-enter the United States.

9.   ORTIZ claimed he last entered the United States on August 14, 2021, at 9 pm.

10.   ORTIZ said that he entered the United States by boat. ORTIZ intended to travel to Bakersfield, California. ORTIZ stated that he understood it was illegal for him to re-enter into the United States after being deported.

**Material witness Oscar SAAVEDRA-Flores**

11.   On August 15, 2021, Border Patrol Agent Intelligence

(BPA-I) Dany Mancilla conducted a material witness interview of Oscar SAAVEDRA-Flores. BPA-I Roland Nejal witnessed the interview. The interview was conducted in the Spanish language. SAAVEDRA stated that he is a citizen of Mexico and was born on November 25, 1976. SAAVEDRA said he does not have any legal documents to allow him to remain in the United States. He claimed that he was voluntarily returned to Mexico and has no deportations. SAAVEDRA stated that he last entered in the United States twenty years ago. He claimed that he last crossed near the border in a car through San Ysidro, California. SAAVEDRA stated he intended to travel to Los Angeles, California.

12. SAAVEDRA said he attempted to enter the United States by boat. He stated that he made smuggling arrangements in Tijuana through a person named Gordo. SAAVEDRA said he was instructed to board the vessel by one of Gordo's workers. SAAVEDRA stated he boarded the boat in Popotla. He stated that he did not board any other boats besides the one on which he was arrested.

13. A photographic array depicting five individuals who were apprehended in this event was presented to SAAVEDRA. Each photo was numbered. SAAVEDRA identified the second photo as himself. He identified the third, fourth, and fifth people as passengers who were sitting next to him. He could not identify the boat captain. He claimed the person who handled the gasoline

was not in the photos.

14. SAAVEDRA stated that he knows how to swim and that everyone on the boat had a life jacket. He claimed that he was not in fear while being on the boat. He stated that he was not insulted, mistreated or threatened while on his trip. He stated that there was no food on board.

15. A subsequent biometric fingerprint database check revealed Oscar SAAVEDRA-Flores's true name to be Enrique AZYA TERAN (DOB 11/25/1981) and that SAAVEDRA had no criminal history.

**Material witness Rocio BELANZO-Sarmiento**

16. On August 16, 2021, at 1:14 A.M., Border Patrol Agent-Intel (BPA-I) Dany Mancilla, Border Patrol Agent (BPA) Leticia Rivera, and Border Patrol Agent (BPA) Desiray Raposa conducted a video-recorded sworn statement of material witness Rocio BELANZO-Sarmiento in the Spanish language. BELANZO was advised of her right to speak with a Mexican Consular Official by BPA-I D. BELANZO stated she understood her rights, as explained to her, and declined to speak with the Mexican Consulate at that time. BELANZO freely agreed to provide a statement, and no threats or promises were made to her.

17. BELANZO stated she is a citizen and national of Mexico, illegally present in the United States without any immigration documents which would allow her to enter, or remain

in the United States (U.S.) legally. BELANZO stated that she has been previously removed from the United States to Mexico on a voluntary basis. BELANZO stated that she last entered the United States one week ago, via the desert near Mexicali.

18. BELANZO stated that her intended destination was Virginia, where her cousins live. BELANZO intended to find work in the fields or carpentry. BELANZO stated that she had never used another name. BELANZO stated she was born in Mexico and currently resides in Veracruz, Mexico.

19. BELANZO stated that her cousins made the arrangements for her to come to the United States. Therefore, she did not know how much was going to be paid to her smugglers upon arrival, but estimated $12,000 to $13,000. BETANZO stated that she knows that it is illegal to re-enter the United States illegally after being deported.

20. BELANZO said that she did not have any fear of persecution or torture should she be removed from the United States.

21. BELANZO stated that her cousins made the arrangements with an unknown subject and gave her instructions to go to Tijuana, Mexico, where she stayed in an unknown house. BELANZO stated that she was picked up at the unknown house in Tijuana, by an unknown Uber driver at approximately 9:00 p.m. The unknown Uber driver took BELANZO to a boat slip. BETANZO stated other

subjects were already at the vessel. BETANZO was told to get on the vessel by an unknown subject.

22. BETANZO stated that she does not know how to swim well but was not provided with a life jacket. BETANZO stated that she feared for her life during the smuggling event.

23. BELANZO stated that she was not insulted, mistreated, or threatened in any way, and she was not given food but was given water while on the boat.

24. BELANZO was shown a photographic line-up and could not identify the driver of the boat.  BELANZO stated that she was able to identify the others on the boat but stated she was unable to make out the face of anyone on the boat until after they had landed due to poor lighting.

25. BELANZO stated that she did not know who had the GPS. BELANZO stated that she did not know who the guide was or who handled the gasoline.

26. BELANZO identified other photographs as passengers on the boat.

**Material witness Marco Antonio MONTANO-Sanchez**

27. On August 16, 2021, at approximately 2:29 a.m., Border Patrol Agent-Intel (BPA-I) D.Mancilla and Border Patrol Agent (BPA) L. Rivera took a sworn audio and video statement from material witness Marco Antonio MONTANO-Sanchez in the Spanish language. MONTANO was advised of his right to speak with a

Mexican Consular Official by BPA-I Mancilla on August 16, 2021, at approximately 2:30 a.m., as witnessed by BPA L. Rivera. MONTANO stated he did not wish to speak to the consulate office at this time. MONTANO freely agreed to provide a statement, and no threats or promises were made to him.  The interview was conducted in the Spanish language.

28.   MONTANO stated he is a citizen and national of Mexico, illegally present in the United States without any immigration documents which would allow him to enter, or remain in the United States legally.

29.   MONTANO stated he was born on April 25, 1980, in Tijuana, Baja California, Mexico. MONTANO stated that he made his smuggling arrangements while he was at his residence in Tijuana.  MONTANO stated his family made all the smuggling arrangements with a person named "Carlos."  MONTANO stated that his family members spoke with Carlos, who asked his family to put down a deposit of approximately $500 to be smuggled by boat. MONTANO stated he was going to pay a smuggling fee totaling $17,000 USD.

30.   MONTANO stated he stayed at his home in Tijuana before leaving to the smuggling boat.  MONTANO stated he was picked up by an Uber driver and was driven to "El Mercado Negro," or the "black market," near the Ensenada Harbor, in Baja California, Mexico.  MONTANO stated that he boarded the boat and was

instructed to take a seat in the cabin of the boat. MONTANO stated there was approximately 16 people inside the cabin of the boat.

31. MONTANO stated that the boat left Ensenada, Mexico, on August 14, 2021, at approximately 9:00 p.m. MONTANO admitted that he knew he was making an illegal entry into the United States by boat. MONTANO stated that his ultimate destination was to reach the state of Oregon to reunite with his family.

32. MONTANO stated he was given a life jacket and was provided with water. MONTANO stated he was not harassed, threatened, or mistreated during the trip.

33. MONTANO was presented with a photographic line-up. MONTANO was not able to identify everyone on the vessel. MONTANO identified the fifth photograph as himself and the first photograph as a passenger on the boat (Rocio BETANZO-Sarmiento). MONTANO did not identify a boat captain or GPS navigator.

34. MONTANO stated that he made all declarations voluntarily and was not promised or coerced into making any statements.

35. A subsequent biometric fingerprint database check revealed Marco Antonio MONTANO-Sanchez's true name to be Jeovani CHILEAN-MACARIO (DOB 10/25/1989) and that MONTANO had no criminal history.

## IV. CONCLUSION

For the reasons described above, there is probable cause to believe that Fernando RODRIGUEZ FONSECA has committed violations of Title 8, United States Code, Section 1326(a), Attempted Illegal Reentry into in the United States Following Deportation or Removal, and Section 1324(a)(1)(A)(i), (a)(1)(A)(v)(I), Conspiracy to Bring and Attempt to Bring an Alien to the United States at a Place Other Than a Designated Port of Entry.

/s/
MARINA DOINO, Special Agent
Department of Homeland Security

Attested to by the applicant in
accordance with the requirements
of Federal Rule of Criminal
Procedure 4.1 by telephone on this
16th day of August, 2021.

**DOUGLAS F. McCORMICK**
HONORABLE DOUGLAS F. McCORMICK
UNITED STATES MAGISTRATE JUDGE